NEBEKER, Senior Judge,
dissenting:
There are two questions presented here: (1) whether, on these facts, the fact-finder with life experiences needs abstract help that effectively throws cold water, i.e. “a reasonable basis to doubt,” on the victim’s identification of the culprit — I say no; and (2) if the majority says it does, whether on these facts the exclusion of such testimony visited undue prejudice on the appellant. I say it did not. In trying to see the issue presented here through the eyes of the majority it is apparent that their premise — per se admissibility of the proffered testimony — is where we disagree. However, there is no en banc decision of the court removing our issue from the near universal discretion of the trial court in matters of expert testimony.
The remedy dictated here is a remand for a hearing. At that hearing the trial judge is to apply the Dyas criteria along with a voir dire of the proffered expert and either order a new trial, or reinstate the conviction and have another appeal. Remand by the majority permits adherence to the earlier exclusion of the testimony after the Dyas and Benn inquiry and voir dire of Dr. Penrod during which he may be tested on whether his conclusions and those of studies he relies upon remain valid in light of the corroborating and uncontested facts discussed herein. Should the trial judge remain of the view that the expertise is unhelpful, he is surely free to exclude it. Further, in light of the expanded record, any error, assumed or real, in excluding the testimony would be reviewed for harmlessness and weighed against the same corroborating evidence we have before us now. Super. Ct. Juv. R. 52(a).
Russell and Benn did not articulate a per se rule that any relevant expert testimony on identification must be admitted. Instead, the admission of that evidence is still entrusted to the discretion of the trial judge who applies the circumstances of the case to the factors articulated in Dyas. The majority’s opinion is founded on the premise that the trial court summarily concluded that expert testimony was not needed, making it necessary to remand to voir dire the proffered expert.[1] That is, on these *302 facts, the court erred in concluding that it was not beyond the ken of the average layperson to evaluate the victim’s identification of the culprit despite the indicia of reliability from closeness of the time and location of the arrest, the ski mask and striped jacket.
Under the circumstances of this case, the trial court’s ruling was within its discretion. The court properly considered the defense’s proffer of testimony in the in limine hearing before concluding that none of the expert testimony would shed light on any aspect of the identification in this case beyond those that were within common sense knowledge. Rather than a summary conclusion, this shows the trial court’s ruling rested on sound and in-depth consideration of what was common sense under the unique circumstances of this case.[2] The danger in what the majority proposes is that a blanket rule requiring the admission of the testimony of experts will interfere with the exercise of common sense. Indeed, as Winston Churchill wrote 113 years ago,
Expert knowledge is limited knowledge: and the unlimited knowledge of the plain man who knows only what hurts is a safer guide than any vigorous direction of a specialized character. Why should we assume that all except doctors, engineers, etc. are drones or worse? ... Is not government itself both an art and a science? To manage men, to explain difficult things to simple people, to reconcile opposite interests, to weigh the evidence of disputing experts, to deal with clamorous emergency of the hour; are not these things themselves the consideration and labour of a lifetime? ... Wherefore I say, from the dominion of all specialists ... good Lord deliver us.
Letter from Winston Churchill to H.G. Wells (Nov. 17, 1901), in Graham Farmelo, Churchill’s Bomb: How the United States Overtook Britain in the First Nuclear Arms Race 18 (2013).
I also respectfully disagree with the majority’s assertion — not necessary for its decision — that “the inquiry as to admissibility does not call for the court to assess the weight of the expert testimony in light of contrary evidence.” Majority Opinion at 297. It does when we consider “whether the testimony would assist the [fact-finder], taking into account the relevance and probative value of the proposed scientific evidence,” an examination required under Dyas. Benn v. United States, 978 A.2d 1257, 1278 (D.C.2009). “It is quintessentially the function of the trial judge to determine whether expert testimony is likely to be helpful” and we review only for abuse of discretion.[3] Id. at 1279, 1280. While we do not affirm convictions where *303 expert testimony is excluded and the government has only presented eyewitness testimony, where, as here, corroborative evidence exists, “the exclusion of the proffered expert testimony by the trial court generally does not constitute an abuse of discretion.” Id. at 1280.
Moreover, it seems, according to the majority, that if there is “physical or scientific evidence, incriminating admission or behavior by the appellant, or third party testimony implicating him,” that evidence would justify denial of the expert testimony, or at least render the exclusion harmless in all cases. Majority Opinion at 300. Presumably, a clear video showing L.C. committing the attempted carjacking would justify the exclusion of expert testimony. I would hold to a lesser standard than the majority does and acknowledge that in such circumstances expert testimony is unhelpful and need not be presented; it is not, as the majority asserts, merely harmless error to exclude such testimony.
Nevertheless, I would conclude that on the evidence here, any error in excluding the testimony is harmless. The corroborating evidence in this case, as that in Patterson v. United States, 37 A.3d 230 amended by 56 A.3d 1152 (D.C.2012), carries far more logically persuasive weight than given it by my colleagues. As the majority acknowledges, we must affirm so long as “the judgment was not substantially swayed by the error.” Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). With the evidence here pointing to L.C. it is not prejudicial error to hold that a reasonable fact-finder, unaided by expert testimony, was able from human experience alone to decide beyond a reasonable doubt that L.C. attempted the carjacking. The evidence is well within the harmless error periphery.
We are not dealing with the ubiquitous tan trench coat, but to me a far more persuasive striped jacket and a ski mask,[4] which my colleagues discount because it was November. With official weather records indicating that the low temperature on November 22, 2009, was 36 degrees,[5] I *304 am not prepared to devalue this fact as I might be if the offense had been committed in January or February. In milder weather such masks better perform the role of an attempted disguise than defense against frostbite. The ski mask in November plus the proximity in time and place of arrest — -just around the block, no more than eight minutes later — of the two men, each whom the victim recognized, also make this case appropriate for a harmless holding. The majority admits that the ski mask and jacket match the victim’s description. What more is needed? The dimensions of the stripes; the size of the jacket; zipper or buttons!
The majority’s insistence that corroborating evidence measure up to some exacting standard lacks common sense. I add to Churchill’s observation, supra, that while we may sometimes bind ourselves by modern thought, common sense is today as it was in the past. Isn’t the ski mask on a cool — not freezing — November day without others around minutes after the flight enough? Or, are these facts to be considered only in isolation from each other? I suggest that the conglomerate of the facts provides enough so that a fact-finder needs no further help in assessing the victim’s identification testimony. To be sure, the subject of the proffered expert testimony here would be beyond the ken of the average person, but the question is whether, in these fact-bound circumstances, a fact-finder needs expert opinion to evaluate the accuracy of the victim identification.
To this, I add one other factor: a pretrial motion to suppress was filed and denied. The issues raised (probable cause to arrest and undue suggestivity) are not presented on appeal. Therefore, we may take as conceded that it was more likely than not — i.e., probable cause — that L.C. attempted the carjacking, that the identification was not unduly suggestive, and that it was reliable; there was no probability of an irreparable misidentification. See Turner v. United States, 622 A.2d 667, 672, 672 n. 4 (D.C.1993) (“While a show-up may not be an ideal setting for an identification, it is not sufficient alone to establish a due process violation.... Indeed, identifications conducted soon after the crime enhance the accuracy of witnesses’ identifications and allow innocent suspects to be quickly freed.”).
This is important because in determining that the identification was reliable, the trial court considered, inter alia, the stress under which the victim may have been acting, that clothing may affect identification, and that “a person’s perception and recollection may be tainted by subsequent events” — the same factors L.C. proffered were relevant for expert testimony. This is not the type of case where we could only speculate about the thought processes of a jury. Instead, in this case the trial judge, acting as fact-finder, made specific findings on the record which we can look to in determining whether the exclusion of expert testimony would have “substantially swayed” the final judgment.[6] Not only did *305 the court consider the same factors proffered by L.C., but it found they were outweighed by other corroborating circumstances of the identification: the proximity in space (“basically ... around the block”) and time (the men were stopped between 6 and 8 minutes after the attempted carjacking); that there was “nobody else in the area”; that the clothing of both men matched the descriptions earlier given; that the ski mask found on L.C. matched the victim’s description (at 8:30 on a November night with a low of 36 degrees); that the victim saw her assailant with light “shining directly” on him; that she “looked him up and down”; that even with the ski mask on, she could “still see his face, the shape of his face” and that the “puffy” look of the mask was caused by L.C.’s dread locks; and that the victim made her identification independently from that of her mother.
The majority holds that this “corroborative evidence [is] irrelevant to the question of the admissibility of appellant’s proffered testimony, [which depends] only on whether that testimony would satisfy the three Dyas criteria....” Majority Opinion at 297 (emphasis added). I submit that life experiences and the facts in the case so coalesce as to justify the conclusion that the fact-finder does not need (or a jury would be confused by) this kind of expert testimony. Nothing more is logically required and the court need not determine whether all three Dyas factors are met.[7] Here, I find the corroborating evidence, when not given the crabbed view of the majority, to be controlling.
The majority says: “The case against L.C. rested on the complainant’s identification of him.... ” Majority Opinion at 293. It did not. Despite their treatment of the other identifying facts as irrelevant to the issue presented, those facts independently vouch for the accuracy of the victim’s observations of L.C. during and after the attempted carjacking. If the victim’s observations of L.C. stood alone, or uncorroborated, the proffered expertise would assist in evaluating their accuracy. However, when L.C. was found minutes later, on the path pointed out by the victim, with a ski mask on a Fall night, wearing a distinctive white-striped jacket, and no other people were around, a discretionary decision to exclude that expertise as not helpful to the trial judge must be sustained.
I would affirm. See Patterson, supra, 37 A.3d 230, 236-40.

. Quite surprisingly, the majority also concludes that the excluded testimony "might have afforded a reasonable basis to doubt” the victim’s identification. Majority Opinion at 300. Does that mean that if the fact-finder *302 hears the expert's testimony (we don’t assume he would lie) an acquittal must follow because a reasonable doubt exists as a matter of law? I would hope not, but the majority opinion surely befogs the situation and invites us to consider whether a judgment of acquittal is in order — as a matter of law — if the testimony is to be accepted at a new trial.

. The majority’s reliance on Russell and Benn reads too much into the decisions for prece-dential purposes. In Russell, the time between the incident and identification was much longer (at least an hour and twenty minutes) and the location of arrest more distant (a number of blocks), and the witness had been drinking. 17 A.3d 581, 583-84 (D.C.2011). In Benn, the government's sole evidence was identification, there was no physical evidence — and the appellant was apparently not arrested near the scene shortly thereafter because the challenged photo array was held a full week after the incident. 978 A.2d 1257, 1263-64, 1264 n. 12 (D.C.2009). In these fact-bound situations there is, in my view, little room for controlling precedent, at least in this case. Remember, precedent is to guide, not to conquer.

. My colleagues find automatic abuse of discretion from their disagreement with the reasoning of the trial judge. Doing so treats the *303 trial judge as an administrator who must give reasons and bases for an administrative decision, and if one reason is erroneous the reviewing court may not substitute its judgment for that of the administrator, but must remand for reconsideration. See, e.g., Securities & Exch. Comm’n v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (“The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.”). Judicial review of discretionary trial court decisions shows no such limitation. We must uphold a discretionary trial court decision if there is a basis to do so whether no reason or an erroneous one were given. Id. at 88, 63 S.Ct. 454 (“In confining our review to a judgment upon the validity of the grounds upon which the Commission itself based its action, we do not disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason.” (internal quotation marks omitted)); see also Johnson v. United States, 398 A.2d 354, 365-66 (D.C.1979) ("Determinations committed to the trial court’s discretion do not submit themselves to a highly structured review for abuse of discretion as easily as do most administrative determinations.... [W]e are prepared to countenance imperfections in the trial court's exercise of discretion to enjoy more fully the advantages of making the determination discretionary. Thus, at times we may find that the fact of error in the trial court’s determination caused no significant prejudice and hold, therefore, that reversal is not required.”).

. Much different than the generic clothing in Russell. See 17 A.3d at 584 (relating description of assailants as "two black males, both wearing black North Face jackets with hoods, blue or dark-colored jeans, and black boots”).

. National Oceanic & Atmospheric Administration records indicate that the high for November 22, 2009 was 58 degrees and the low *304 was 36 degrees at the National Arboretum, the closest weather station to where the events occurred.

. The majority’s insistence on treating harmlessness equally between jury and bench trials defies logic. There are unchallengeable differences between a jury that deliberates and votes in secret and a judge who makes his findings known on the record. The evaluation of the harmlessness of error in a bench trial, unlike a jury trial, benefits from those specific findings. Where, as here, findings were made on the record, we must acknowledge and incorporate them in determining whether any alleged error substantially swayed those findings and the judge’s ultimate conclusions.

. The authorities purportedly backing up a conjunctive application of the tests make no sense. Examples such as DNA evidence or a video picture of the defendant committing the offense make any Dyas criteria other than "ken of the average person” irrelevant to the question of admissibility. If a conjunctive reading leads to absurd results the disjunctive becomes necessary.